UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MASHAMA HILL,

                                      Plaintiff,

    vs.                                                       9:11-CV-392
                                                                    (GTS/ATB)

JOSEPH BELLINIER, *et al.*,

                                        Defendants.
_____

MASHAMA HILL, Plaintiff *pro se*
KEVIN P. HICKEY, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleged that defendants failed to protect him from another inmate, and defendant Patterson used excessive force against plaintiff while he was being "extracted" from his cell. (Compl. Dkt. No. 1). On September 21, 2011, the original defendants filed a motion to dismiss this action for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 10). On April 6, 2012, I recommended that defendants' motion be granted in part and denied in part. (Dkt. No. 21). By order dated July 12, 2012, the Honorable Glenn T. Suddaby adopted the recommendation in its entirety. (Dkt. No. 22). The only claim remaining in this action is an Eighth Amendment claim for excessive force against defendant Patterson in his individual

capacity.[1] (*Id.*)

Presently before the court is the plaintiff's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 43). Defendant has responded in opposition to the motion. (Dkt. No. 44). Plaintiff has filed a reply. (Dkt. No. 47). For the following reasons, this court agrees with the defendant and will recommend denying plaintiff's summary judgment motion so that this case may proceed to trial on the remaining claim.

I. **Facts**

The court will review the facts that are relevant to the alleged excessive force. Plaintiff states that he expressed his concern that he was being housed with inappropriate inmates. Plaintiff claims that on April 10, 2008, he "aggressively implored the housing unit officers to remove [plaintiff] from the double cell in which he was [incarcerated] due to statements addressed to him by his cell mate Curtis Brown (a listed Blood Gang Member)." (Compl. ¶ 5) (Dkt. No. 1). Plaintiff alleges that these "comments" concerned the "nature" of plaintiff's case. (*Id.*) Due to these comments, plaintiff became "fearful for his well-being," and he claims that he spoke to defendants McDonald and Patterson about being moved out of his cell. (*Id.*) Plaintiff's request was denied, he claims that he was not allowed to speak to a superior officer, and his concerns were "further disregarded." Plaintiff states that as a result, he

---

[1] The court notes that plaintiff's failure-to-protect claims against defendants Bellnier, McDonald, and Patterson were dismissed without prejudice, but plaintiff has not amended his complaint to properly allege a failure to protect claim. Thus, the only remaining claim is for excessive force as against defendant Patterson.

2

"refused to comply with the Officers' request to return his "feed up tray." (*Id.*)

Plaintiff alleges that later, he and his cell-mate "engaged in a physical conflict where plaintiff had overtaken his cell-mate and bound him up with torn bed linen to prevent him from perpetuating any further physical aggression." (Compl. ¶ 6). Plaintiff states that after he tied up his cell-mate, he was allowed to speak with officers, including superior officers, but they were more interested in plaintiff returning his tray than in moving plaintiff to another cell. (Compl. ¶ 7). Plaintiff states that "an extraction team was assembled,"[2] and while carrying out the "extraction," defendant Patterson allegedly hit plaintiff on the head multiple times and pulled a patch of hair out of his head, even though plaintiff had already been restrained and was being cooperative. (*Id.* ¶¶ 7-8).

## II. **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party

---

[2] The court assumes that the "extraction team" was assembled because plaintiff would not return the tray and would not come out of the cell. Plaintiff was apparently threatening to use the tray on his cell-mate. (*See* Compl., Relief Requested ¶ 1). In the relief paragraph, plaintiff states that he was holding the feed up tray and "conflicting his cellmate [sic]." Plaintiff admits in that paragraph that his actions might have "appear[ed] rather suspect." (*Id.*)

3

for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

"The district court considering a summary judgment motion . . . must . . . be 'mindful of the underlying standards and burdens of proof . . .'" *U.S. S.E.C. v. Meltzer*, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (citations omitted). Where, as here, the plaintiff is moving for summary judgment, he bears a much greater initial burden; he "must show that the evidence supporting [his] claims is so compelling that no reasonable jury could return a verdict for the defendant." *Id*. Accord, *McCarthy v. Wachovia Bank, N.A.*, 759 F. Supp. 2d 265, 273 (E.D.N.Y. 2011).

### III. <u>Excessive Force</u>

    A.     Legal Standard

The Eighth Amendment prohibits the "'unnecessary and wanton infliction of pain.'" *Baker v. Willett*, 42 F. Supp. 2d 192, 196 (N.D.N.Y. 1999) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). When the use of excessive force is alleged, the court must determine whether the force "was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitely v. Albers*, 475 U.S. 312, 320–21 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). In order to meet the constitutional standard for excessive force, the defendants' conduct must be "'inconsistent with the contemporary standards of decency' and 'repugnant to the conscience of mankind.'" *Whitely*, 475 U.S. at 327.

Minor uses of physical force do not reach the constitutional level as long as the force used is not "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992). However, the court must determine the need for the force, the relationship between the need and the amount of force used, the extent of the injury suffered, the extent of the threat to the safety of staff and inmates, and any efforts made to temper the severity of a forceful response. *Whitely*, 475 U.S. at 321. Not every push or shove, even if it seems unnecessary, amounts to a violation of the constitution. *Hudson*, 503 U.S. at 9–10 (*de minimis* force); *Johnson v. Glick*, 481 F.2d at 1033.

## B. Application

In his motion, plaintiff concedes that defendant Patterson was facing a situation in which plaintiff refused to give up his tray, and he concedes that he had restrained his cell-mate for whatever reason. (Dkt. No. 43 at 8). Plaintiff then states that "what plaintiff [does] not agree with is def. Patterson's assertions that he (Patterson) had issued plaintiff commands to get down on the floor, after entering the cell, and had assisted in taking plaintiff to [the] floor by placing force upon plaintiff's shoulders." (Dkt. No. 43 at 9). Plaintiff then claims that neither Patterson, nor any other officers have "explained" how plaintiff's hair was pulled out. Plaintiff claims that the officers have given "versions" of the event, but that no officer has alleged that plaintiff continued to struggle to the extent that "assaultive" force was necessary. Plaintiff also believes that it is significant that the defendant has failed to produce the video footage of the incident.[3] Defendant argues that plaintiff's motion is untimely, but also argues that plaintiff has not sustained his burden to show that there is no genuine issue of material fact in this case, and that he is entitled to judgment as a matter of law.

This court finds that, even assuming that plaintiff's motion is timely, it must be denied. Plaintiff's statements do not show the absence of a genuine issue of material fact. In fact, it is just the opposite. Plaintiff claims that defendant Patterson used excessive force under the circumstances because plaintiff was hit with a baton and had a substantial portion of his hair pulled out. Plaintiff emphasizes that defendant

---

[3] The "video footage" has been the subject of a discovery dispute and a motion to compel in this action as discussed below. (Dkt. No. 39 at 5-6).

Patterson and the other officers have a *different version* of the event. In his response to plaintiff's motion, defendant Patterson states that he has repeatedly denied plaintiff's version of the facts, and cites to the Misbehavior Report and the Unusual Incident Report that were written as a result of the incident. These documents were signed by non-defendant officers in addition to defendant Patterson. (Dkt. No. 44) (citing Kinsey Aff. Ex. A & B) (Dkt. No. 44-1). Defendant states that these documents "relate a different set of facts than alleged by plaintiff." (*Id.*)

In order to grant plaintiff's motion for summary judgment, this court would have to make factual findings regarding the incident that are disputed by defendant and contradicted by the documents submitted. The court may not make such factual determinations on a motion for summary judgment. The extent of the force and the need for the force are questions of fact that cannot be resolved on the papers. The questions are genuine and material because the Eighth Amendment analysis focuses upon need for the force, the relationship between the need and the amount of force used, the extent of the injury suffered, the extent of the threat to the safety of staff and inmates, and any efforts made to temper the severity of a forceful response. *Whitely, supra.*

Plaintiff states that because *defendant* has failed to articulate a justifiable need to use force to inflict blows to plaintiff's head and face and pull hair from his head and because he has failed to give a good reason why plaintiff has not been provided with the video footage of the incident, plaintiff is entitled to summary judgment. (Dkt. No. 43 at 13-14). The video footage of this incident was the subject of a discovery dispute

which was resolved while this motion was pending.

Plaintiff filed his motion for summary judgment on April 29, 2013, complaining, in part that he was never given the video footage in question. (Dkt. No. 43). The court assumes that plaintiff was implying that the video footage would have supported his version of the events and would have provided further support for his summary judgment motion. Defendant filed his response to the summary judgment motion on April 30, 2013. (Dkt. No. 44). On May 17, 2013, I granted plaintiff an extension of time to June 20, 2013, to file a reply. (Dkt. No. 46). Plaintiff filed his reply on May 23, 2013 and filed his motion for discovery sanctions on the same day, still complaining about defense counsel's failure to provide the video tape. (Dkt. Nos. 47, 48).

On May 23, 2013, I issued an order to defense counsel in response to plaintiff's motion for sanctions. (Dkt. No. 49). I ordered that defense counsel confirm whether he had the video evidence and whether he had taken any steps to disclose it to the plaintiff. (*Id.*) On June 11, 2013, defense counsel responded by stating that a copy of the video was mailed to plaintiff at his new address in Virginia on May 21, 2013.[4] (Dkt. No. 50). Defense counsel had mailed a copy of the video to plaintiff previously, but it may never have reached plaintiff due to his transfer to Virginia.[5]

In the same letter, defense counsel requested that the court administratively

---

[4] It does not appear that plaintiff would have received the video prior to mailing his reply for filing.

[5] Plaintiff is now incarcerated at MDC Brooklyn. (Dkt. No. 57) (change of address filed by plaintiff on November 25, 2013).

8

close this action based upon plaintiff's current federal custody and potential difficulty in bringing him to the Northern District of New York for trial. On June 20, 2013, plaintiff wrote a letter to the court, requesting that the court "strike" the defendant's response to the motion for sanctions. (Dkt. No. 52). In this letter, plaintiff appeared to be complaining that defense counsel was late in sending the video, and defense counsel had no "proof" that he sent a previous copy of the video. Plaintiff never claimed that he did not get the video at all. In his letter, plaintiff also asked for appointment of counsel. (*Id.*)

On June 21, 2013, I denied plaintiff's motion to strike the defendant's response to the motion for sanctions, denied defendant's request to administratively close the action, and denied plaintiff's request for counsel without prejudice. (Dkt. No. 53). Plaintiff apparently received the video tape, before the deadline for him to file a reply, but he never requested to supplement his motion for summary judgment based upon anything that was depicted in the video. Thus, he appears to concede that the video would not have had any impact upon his motion for summary judgment.

As stated above, the burden is on the moving party to show that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 323. Plaintiff has not done so, and a jury will have to decide the factual disputes involved in order to determine whether the force involved in this case was constitutionally excessive.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's motion for summary judgment (Dkt. No.

43) be **DENIED**, and it is

**RECOMMENDED**, that if the District Judge adopts this recommendation, the case be sent back to me for reconsideration of plaintiff's motion for appointment of counsel in conjunction with any necessary pretrial proceedings.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 8, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge